IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. JKB-09-0288 |
| TERRENCE RICHARDSON, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Before the Court are Defendant Terrence Richardson's *pro se* Motion for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2), (ECF No. 1838), and his later Motion for Compassionate Release and Request for Sentence Reduction under Section 404 of the First Step Act, which he filed through counsel, (ECF No. 2092).[1]

The time for briefing the *pro se* motion has expired, the counseled motion is fully briefed, and no hearing is required on either. *See* Local Rule 105.6 (D. Md. 2025). For the reasons below, the motions will be denied.[2]

### I.  BACKGROUND

#### A.  Richardson's Conviction & Sentence

In May 2009, a grand jury indicted Richardson and nearly three dozen others on two counts: Conspiracy to Participate in Racketeering Activity, in violation of 18 U.S.C. § 1962(d) (Count I),

---

[1] The *pro se* motion advances arguments that neither the counseled motion nor the Government addresses. Rather than speculate about Richardson's intent (or not) to supplement and/or replace his *pro se* filing, the Court notes simply that the grounds for denying the later motion apply in equal measure to the earlier one. *See infra* Section II. For that reason, the Court will deny both on the merits.

[2] The docket also shows an open motion from December 2016, in which Richardson seeks transcripts from a motions hearing held on December 20, 2016. (*See* ECF No. 1606.) Because this motion is nearly nine years old, it will be denied as moot. That denial will be without prejudice to Richardson filing another motion for the same relief, in the event he did not receive the transcripts and still requires them.

and Conspiracy to Distribute and Possess with Intent to Distribute, in violation of 21 U.S.C. § 846 (Count II). (ECF No. 1.) The indictment rested on Richardson and the others' alleged participation in the Pasadena Denver Lanes ("PDL") gang, a subsidiary of the Bloods. (*See id.* ¶¶ 1–22.) Among other things, Richardson was alleged to have ordered the murder and beating of others both within and outside the organization. (*See, e.g., id.* ¶¶ 17, 38, 93.)

In March 2010, a jury found Richardson guilty on both counts. (ECF No. 680.) On Count I, the jury found that Richardson had participated in eight predicate racketeering activities: (1) distribution of crack cocaine, (2) distribution of cocaine, (3) distribution of heroin, (4) distribution of marijuana, (5) robbery, (6) conspiracy to commit first-degree murder, (7) attempted first-degree murder, and (8) attempted second-degree murder. (*Id.* at 1.) On Count II, the jury found that Richardson had distributed and/or possessed with intent to distribute fifty grams or more of crack cocaine, in addition to heroin, cocaine, and marijuana. (*Id.* at 2.)

Richardson was sentenced in June 2010. (ECF No. 856.) At sentencing, the Court noted the jury's findings that Richardson, then thirty years old, had been the leader of "a violent PDL set of the Bloods gang" and that, "based on the overwhelming evidence at trial," he had participated in a conspiracy whose activities included drug distribution and attempted murder. (*See id.* at 27:17–25.) It observed that Richardson had already received two adult convictions—cocaine possession and robbery with a deadly weapon—and had no employment history, "probably explained by his incarceration history." (*Id.* at 27:25–28:3.) And it concluded, based on a preponderance of the evidence available at sentencing, that Richardson had ordered the successful execution of one Brandon Eveline. (*Id.* at 28:4–8.) Additional details of Richardson's conduct are set out in his presentence investigation report, (*see* ECF No. 2094), the findings of which the Court adopted without change. (ECF No. 753 at 1.)

Based on those findings, the Court imposed concurrent life sentences on both counts. (ECF No. 856 at 28:9–10; *see also* ECF Nos. 752–53.) It described the sentences as "sufficient but not greater than necessary to reflect the seriousness of the[] offenses, to provide just punishment for them, to afford adequate deterrence, to protect the public from further crimes of the Defendant, and to promote respect for the law." (ECF No. 856 at 28:9–14.) It also imposed concurrent five-year terms of supervised release on both counts, with special conditions including substance-use screening and treatment and a requirement that Richardson attempt to earn his GED. (*Id.* at 28:15–22.)

### B.     Richardson's Incarceration & Postconviction Procedural History

Richardson is currently housed at USP Coleman II in Sumterville, Florida. *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 15, 2025).[3] His prior direct and collateral challenges to his conviction have been denied. (*See* ECF No. 2092 at 5–6; ECF No. 2096 at 7.)

Richardson's prison disciplinary record reveals a steady trickle of violations, roughly one per year, since his incarceration began in 2010. These include six writeups for possessing a dangerous weapon; five for using, possessing, or introducing drugs or alcohol; four for refusing to obey orders or complete his work assignments; two for fighting and/or assaulting others; and more. (*See* ECF No. 2094-11 at 1–2; ECF No. 2099-1 at 1–7.) Five of those offenses—two drug/alcohol possessions, two refusals to obey/work, and one assault without serious injury—occurred within roughly the last two years. (*See* ECF No. 2099-1 at 1–2.) Richardson states that he resolved the recent refusals to obey/work (two "300-level" offenses, denoting "moderate" severity) by speaking

---

[3] The Bureau of Prisons mistakenly lists Richardson's first name as "Terrance," not "Terrence." Richardson's BOP register number is 43736-037.

to a counselor and "accept[ing] the sanctions" BOP imposed. (ECF No. 2100 at 1.) He argues that the drug-possession offenses (two "100-level" offenses, denoting "greatest" severity), which consisted of staff finding suboxone and amphetamine-soaked paper in his cell, are "mitigat[ed]" by the fact that he shares his cell with another inmate and that, "[i]n these situations, both inmates are typically charged." (*Id.* at 2.) And he denies the assault without serious injury (a "200-level" offense, denoting "high" severity), which he says "arose during an inmate flag-football game" in any event. (*Id.*)

The record separately shows Richardson's participation in and completion of various prison programs. These include courses in money management, parenting, and victim-impact awareness, and progress toward his GED. (*See* ECF No. 2094-9 at 1; *see also* ECF Nos. 2094-7, -8.) They also include a "drop tag" program, through which Richardson has formally renounced his gang affiliation. (*See* ECF No. 2092 at 12; ECF No. 2094-6.) He says he took this step "to chang[e] [his] life and live for [his] family," having realized "that being a Blood for the last 27 year[s] has done nothing for [him] but put [him] in prison for life away from [his] family." (ECF No. 2094-12 at 1.) He notes that this process was dangerous, as it opened him up to attack from other gang members. (*See id.*)

Finally, the record contains three letters from people in Richardson's life, each attesting to his growth in prison. (*See* ECF Nos. 2094-13, -14, -15.) All three are from family members and describe difficulties Richardson experienced in childhood. (*See id.*; ECF No. 2092 at 25.) One letter, written by Richardson's niece, welcomes him into her home in the event he is released, and states that he would enjoy the support of his nearby family. (*See* ECF No. 2094-15.)

In May 2019, Richardson moved under 18 U.S.C. § 3582(c)(2) to reduce his sentence pursuant to Amendments 706, 750, and 782 to the United States Sentencing Guidelines. (ECF No.

4

1838.) At the time of filing, Richardson was proceeding *pro se*. (*See id.*) No party briefed that motion further, and the time for doing so has long expired. *See* Local Rule 105.6.

In April 2025, Richardson moved to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) and (B). (ECF No. 2092.) He filed this motion through court-appointed counsel. (*See id.* at 26–27; ECF No. 2060.) In it, Richardson argues that his circumstances present "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A). (ECF No. 2092 at 6–14.) These include a disparity between his sentences and those of his codefendants, his completion of the "drop tag" program, and the harshness of his life sentences, given his purported youth at the time of the offenses and the realities of being incarcerated during the COVID-19 pandemic. (*Id.* at 9–14.) He also argues that a sentence reduction is warranted under section 404 of the First Step Act of 2018. (*Id.* at 15–17.) In relevant part, that statute made retroactive certain provisions of the Fair Sentencing Act of 2010, which aimed to reduce sentencing disparities between crack-cocaine and powder-cocaine offenses. *See United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020). On either or both grounds, Richardson asks that his life sentences be reduced to time served or some other term of years. (ECF No. 2092 at 1, 26.) The Government opposes. (ECF No. 2096.)

## II.    LEGAL STANDARDS

Congress has authorized the district courts to revisit and modify their earlier sentences in only limited circumstances. *See* 18 U.S.C. § 3582(c). Richardson contends three are relevant here. The first arises when "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Requests of this type, along with others brought under § 3582(c)(1)(A), are known as motions for compassionate release. *See, e.g.*, *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). The second arises when either a statute or Federal Rule of Criminal Procedure 35 permits modification of an earlier sentence. 18 U.S.C. § 3582(c)(1)(B). That includes

5

modifications under section 404 of the First Step Act. *See* First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194, 5222. The third arises when a defendant has been sentenced to a prison term based on a sentencing range that was later amended downward by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(2). For that provision to apply, the Commission must have given its amendment retroactive effect. *See United States v. Barrett*, 133 F.4th 280, 283 (4th Cir. 2025). Amendments 706, 750, and 782 are all retroactive amendments, at least in part. *See* U.S.S.G. § 1B1.10(d).

Each of these provisions carries unique requirements for relief. But regardless of which one a movant invokes, he must show that a sentence reduction is consistent with a renewed assessment of the 18 U.S.C. § 3553(a) sentencing factors. *See* 18 U.S.C. § 3582(c)(1)(A), (2); *United States v. Swain*, 49 F.4th 398, 400 (4th Cir. 2022). These include "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, *id.* § 3553(a)(2)(A); the need to deter future criminal conduct, *id.* § 3553(a)(2)(B); the need to protect the public, *id.* § 3553(a)(2)(C); the need to provide the defendant with effective training, treatment, or other rehabilitative measures, *id.* § 3553(a)(2)(D); the kinds of available sentences, and the Sentencing Guidelines' policy statements and recommendations regarding the same, *id.* § 3553(a)(3)–(5); the avoidance of sentencing disparities across like conduct and defendants, *id.* § 3553(a)(6); and the need to provide restitution to any victims, *id.* § 3553(a)(7). Courts may, and often do, decline to reduce a movant's sentence based on the § 3553(a) factors alone. *See, e.g., United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021); *United States v. Hall*, Crim. No. JKB-04-323, 2022 WL 2105975, at *4 (D. Md. June 10, 2022); *United States v. Aigbekaen*, Crim. No. JKB-15-462, 2021 WL 100813, at *2 (D. Md. Jan.

6

12, 2021).

## III.  ANALYSIS

Upon a renewed assessment of the 18 U.S.C. § 3553(a) factors, the Court concludes that a reduction in Richardson's sentence would not be consistent with the goals of that provision, at least as to Count I.[4] It is on that basis alone that the Court denies the pending motions; it assumes, without deciding, that Richardson has met all other applicable requirements for relief.

As Richardson himself acknowledges, his crimes were gravely serious. He was a leader of a Baltimore unit of the violent PDL street gang. (ECF No. 2094 ¶ 7.) In that capacity, he oversaw the distribution of large quantities of dangerous and illegal narcotics. (*See id.*) He presided over acts of profound violence, including robberies, assaults, and murders. (*See id.* ¶¶ 7, 9.) He ordered harsh "sanctions" against other members of his gang, some of whom had to be hospitalized because of their injuries. (*Id.* ¶ 9.) One killing he ordered was stopped by federal agents; another was not. (*See id.*)

The decision to take a life is an offense of the highest order. Richardson made that choice twice over. In light of the culpability that this choice entails, a sentence of life in prison on Count I was and remains an appropriate starting place on several of the § 3553(a) factors. These include, most prominently, the nature and circumstances of the offense and the need for a sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Given the gravity of the conduct of conviction, these factors weigh heavily in the Court's analysis.

The Court is not swayed by the arguments Richardson offers in mitigation. For one, rather

---

[4] Because the Court concludes that a life sentence remains appropriate on Count I (the racketeering-conspiracy count), it need not address the propriety of the concurrent life sentence imposed on Count II (the drug-conspiracy count). Even if a reduction were appropriate for the latter, it would have no effect on Richardson's incarceration.

7

than identifying changed circumstances, some of his arguments raise information that was already known to the Court at sentencing. This includes information about Richardson's age and variations between his sentence and those of his codefendants. While this information is relevant to the § 3553(a) analysis, *see* 18 U.S.C. § 3553(a)(1), (6), it is not new.

Even if this information were new, it would not be persuasive. Richardson was at least twenty-seven years old at the time of his conduct. Youth is typically considered a meaningful factor for only those defendants whose acts occurred when they were twenty-five or younger. *See United States v. Johnson*, Crim. No. 97-314, 2023 WL 5049267, at *5 (E.D. Va. Aug. 8, 2023) (collecting cases). That Richardson had been incarcerated for a total of eight and a half years before that, starting when he was sixteen years old, does not change the fact that he falls outside the usual band of "youthful" defendants. (*See* ECF No. 2092 at 13–14.) Other than still being in his twenties when he committed the instant offenses, Richardson offers no evidence as to why he is entitled to the special solicitude reserved for those whose brains were not fully physically developed.

There is also no unwarranted disparity in Richardson's sentence. The putative disparities he identifies are between his sentence and those of his codefendants. (*See* ECF No. 2092 at 9–11.) But the Fourth Circuit has repeatedly held that the fact of variation among codefendants' sentences is not fertile ground for a disparity-based reduction, including for purposes of a § 3553(a) analysis. *See United States v. Smith*, 836 F. App'x 149, 152–53 (4th Cir. 2020); *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996) ("To base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach which ignores the Guidelines' attempt to eliminate unwarranted sentencing disparities *nationwide*." (emphasis added)). Indeed, this Court rejected an identical argument (while ultimately granting a reduction on other grounds) when it was earlier

raised by one of Richardson's coconspirators. *See United States v. Banks*, Crim. No. JKB-09-0288, 2022 WL 1028680, at *6 (D. Md. Apr. 6, 2022).

Most important to the disparity issue, however, is that the circumstances of the codefendants Richardson invokes are meaningfully distinct from Richardson's own. Take Emiliano Aguas. (*See* ECF No. 2092 at 10.) Like Richardson, he was a leader in the PDL unit, and he was convicted of similar violent and drug-related acts. (*See* ECF No. 2096-3 at 1, 4.) But Aguas accepted responsibility and pled guilty. (*Id.* at 1, 5.) His stipulated facts did not directly implicate him in anyone's death. (*See id.* at 4.) And his plea was entered under Federal Rule of Criminal Procedure 11(c)(1)(C), whereby the parties agreed to a sentence of 288 months. (*Id.* at 5.) Larry Mitchell and Antonio White are similar. (*See* ECF No. 2092 at 9.) Both accepted responsibility and pled guilty (in White's case, through a Rule 11(c)(1)(C) plea carrying 262 months). (*See* ECF No. 2096-4 at 1, 4–5; ECF No. 2096-5 at 1, 4–5.) Neither stipulated to facts directly implicating him in anyone's death. (*See id.*) And, unlike Aguas and Richardson, neither was a leader in the PDL organization. (*See id.*) Gregory Saulsbury is even less apposite. (*See* ECF No. 2092 at 9–10.) Like Richardson, he was sentenced to life in prison (albeit pursuant to a statutory minimum). *United States v. Saulsbury*, 479 F. Supp. 3d 225, 227 (D. Md. 2020). But he was charged with and convicted of only Count II of the indictment, the drug-conspiracy offense. *See id.*; (ECF No. 1 at 31–32). He was not charged as a member of the PDL racketeering enterprise, and therefore was not implicated in the same violent offenses. (*See* ECF No. 1 at 8–9.) The sentence reduction he later received simply does not bear on Richardson's case. *See Saulsbury*, 479 F. Supp. 3d at 230–31.[5]

---

[5] For similar reasons, Richardson's blanket invocation the fact that dozens of other codefendants have now been released from prison, (*see* ECF No. 2092 at 9 n.8), hardly raises the prospect of "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Richardson's appeal to the more recent COVID-19 pandemic does not tip the scales in his favor. The Court recognizes that being incarcerated during the COVID-19 crisis, particularly its early days, was a fraught and hazardous experience. Other judges have rightly acknowledged that "the actual severity of [a] sentence as a result of the COVID-19 outbreak [can] exceed[] what the Court anticipated at the time of sentencing." *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). But simply being incarcerated during the COVID-19 pandemic—absent aggravating factors like acute health problems, a particularly severe outbreak in one's facility, and other circumstances unrelated to the virus—is not so inherently punitive that it merits early release, particularly for defendants situated similarly to Richardson. The cases he cites are not to the contrary. (*See* ECF No. 2092 at 14 (first citing *Mel*, 2020 WL 2041674, at *3 (granting a two-week reduction in light of a "serious" outbreak of COVID-19 in the defendant's facility, her "very limited" role in the offenses of conviction, her lack of criminal history, the fact that she "present[ed] absolutely no danger to others," and her "prolonged separation from her child"); then citing *United States v. Hatcher*, Crim. No. 18-454-10, 2021 WL 1535310, at *5 (S.D.N.Y. Apr. 19, 2021) (reducing a sentence from fifty-two months to time served, in part based on the defendant's "near-total lockdown[] without the mental health and other support programs . . . critical to her health and ability to reenter society"); and then citing *United States v. Mcrae*, Crim. No. 17-643, 2021 WL 142277, at *3–6 (S.D.N.Y. Jan. 15, 2021) (granting a roughly forty-month reduction to a defendant with a "heightened vulnerability to COVID-19" and no history of violence)).) For that reason, the circumstances of the COVID-19 pandemic do not go beyond what is necessary to provide just punishment for Richardson's offense. *See* 18 U.S.C. § 3553(a)(2)(A).

The Court recognizes, of course, that some of Richardson's circumstances operate in his

10

favor in the § 3553(a) analysis. The Court commends Richardson on his educational progress and his difficult choice to participate in the "drop tag" program. *See United States v. Beres*, Crim. No. 18-58, 2023 WL 8809320, at *2 (D. Mont. Dec. 20, 2023) (recognizing that a "drop tag" program goes beyond mere rehabilitation in part because of the danger it poses to the participant). These developments inform the Court's inquiry as to his history and characteristics, 18 U.S.C. § 3553(a)(1), and the need to deter and to protect the public from any future misconduct, *id.* § 3553(a)(2)(B)–(C). The Court also notes Richardson's stated commitment to supporting his family as well as his family's commitment to supporting him—including, if necessary, by housing him upon release. (*See* ECF Nos. 2094-12 to -15.) Commitments like these suggest an environment in which Richardson will neither be enticed to reoffend nor pose a danger to others, *see* 18 U.S.C. § 3553(a)(2)(B)–(C), in which he will receive appropriate educational and vocational training, *id.* § 3553(a)(2)(D), and that capitalizes upon the full range of available sentences, including, as appropriate, supervised release, *id.* § 3553(a)(3).

Finally, Richardson's disciplinary record. While some aspects are obviously troubling, the Government characterizes the record as overall "light" and—to the extent it includes Richardson's educational and "drop tag" efforts—"a factor in his favor." (ECF No. 2096 at 17.) The Court concludes that the record is neither unusually good nor so problematic as to foreclose relief. *See United States v. Aigbekaen*, Crim. No. JKB-15-462, 2025 WL 1347054, at *6 (D. Md. May 8, 2025) ("A petitioner need not have a 'spotless' disciplinary record to be entitled to a sentence reduction." (citation omitted)). That is, the disciplinary record makes little difference either way in the § 3553(a) analysis, especially as assessed against other, much weightier factors.

The Court concludes that the § 3553(a) factors militate against modifying Richardson's life sentence on Count I. Chief among these, by far, are the nature and circumstances of his offense

and the need for his sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). As a leader of a violent criminal organization, Richardson ordered the deaths of multiple people, among multiple other violent or destructive acts. Were the Court to resentence him today, it would remain convinced that a life sentence was the sentence sufficient but not greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a).

## IV.  CONCLUSION

Even assuming that Richardson had met all other applicable requirements for relief, he has not shown that a sentence reduction is consistent with a renewed assessment of the sentencing factors set out in 18 U.S.C. § 3553(a).

Consistent with that conclusion, it is ORDERED that:

1. Richardson's *pro se* motion for a sentence reduction, (ECF No. 1838), and his later motion for compassionate release, (ECF No. 2092), are DENIED.

2. Richardson's request for transcripts, (ECF No. 1606), is DENIED AS MOOT, without prejudice to Richardson refiling a request for the same relief as needed.

3. The Clerk is DIRECTED to mail to Richardson a copy of this Memorandum and Order.

DATED this 31 day of July, 2025.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge